UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
A.A., A MINOR, BY AND THROUGH HIS :
NATURAL PARENT, STEVE ALTES, SEAN :
BOOZER, PAUL BRIGHT, BILLY CHOI, RON :    Civil Action No. 1:20-cv-10834-ALC
GILBERT, LINNETTE HARRIGAN, AND :
MAURICE TYSON, :
:
Plaintiffs, :
:
- against - :
:
AFTRA RETIREMENT FUND, :
:
Defendant. :
---------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

*Attorneys for Defendant*
*AFTRA Retirement Fund*

# <u>TABLE OF CONTENTS</u>

**Page**

I.  PRELIMINARY STATEMENT ........................................................................................1

II. STATEMENT OF FACTS ............................................................................................2

III. PLEADING STANDARDS ...........................................................................................4

    A.  Rule 12(b)(1) .........................................................................................................4

    B.  Rule 12(b)(6) .........................................................................................................5

IV. ARGUMENT ...............................................................................................................6

    A.  Plaintiffs Have Not Alleged Injury-in-Fact Necessary to Satisfy the
        Standing Requirements of Article III ....................................................................6

        1.  Plaintiffs' Alleged "Injuries" are Insufficiently Actual or Imminent
            to Support Standing ...................................................................................9

            a.  The Mere Exposure of Personal Data is Insufficient to
                Support Standing ..........................................................................9

            b.  Plaintiffs' Allegation That Exposure Of Their Information
                Creates A "Diminution Of Value" Of That Information
                Does Not Plead A Cognizable Injury...........................................10

            c.  Plaintiffs' Conclusory Allegations Of Potential Future
                Harm Fail To Establish Article III Standing ...............................12

            d.  Plaintiffs' Conclusory Allegations Of The Time And
                Expenses Spent To Prevent Or Mitigate The Consequences
                Of Any Future Disclosure Of Their Personal Information
                Also Fail To Establish Article III Standing..................................16

    B.  Plaintiffs' Common Law And State Statutory Claims Fail To State Viable
        Claims For Relief. ................................................................................................17

        1.  Plaintiffs' Failure To Adequately Allege "Injury" Is Fatal to All of
            Their Alleged Causes of Action.............................................................18

        2.  Plaintiffs' Unjust Enrichment Cause of Action Fails as Duplicative
            and Does Not State a Claim...................................................................20

        3.  Plaintiffs Have No Private Cause of Action Under GBL § 899-a ...........21

4.     Plaintiffs' CCPA Claim Fails as The Statute is Not Retroactive and Does Not Apply to Non-Profit Organizations..........................................22

CONCLUSION...........................................................................................................................23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*,
   49 Misc. 3d 1027, 19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015).....................................................21

*ACLU v. Clapper*,
   785 F.3d 787 (2d Cir. 2015) ......................................................................................................7

*In re Adobe Sys., Inc. Priv. Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2013).....................................................................................20

*All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*,
   436 F.3d 82 (2d Cir. 2006) ........................................................................................................4

*Amidax Trading Grp v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011) (*per curiam*) ...............................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................5, 8

*Attias v. CareFirst, Inc.*,
   365 F. Supp. 3d 1 (D.D.C. 2019) .....................................................................................13, 17

*Bahari v. State Bar of California*,
   No. 19CV360452, 2020 WL 5493870 (Cal. Super. Aug. 06, 2020).......................................23

*Bank v. CreditGuard of Am.*,
   No. 18-CV-1311, 2019 WL 1316966 (E.D.N.Y. Mar. 22, 2019)............................................5

*Baur v. Veneman*,
   352 F.3d 625 (2d Cir. 2003) ..................................................................................................5, 7

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ..................................................................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................................5, 8, 17

*Caronia v. Philip Morris USA, Inc.*,
   22 N.Y.3d 439 (2013)...............................................................................................................19

*Caruso v. Zugibe*,
   No. 14 CV 9185 VB, 2015 WL 5459862 (S.D.N.Y. June 22, 2015), *aff'd*, 646
   F. App'x 101 (2d Cir. 2016) ....................................................................................................4

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*,
    580 F. Supp. 2d 273 (S.D.N.Y. 2008) ...............................................................16

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................*passim*

*Cornfield v. Cornfield*,
    156 F. App'x 343 (2d Cir. 2005) ....................................................................19

*Corsello v. Verizon* N.Y. Inc.,
    967 N.E.2d 1177 (2012) ............................................................................20, 21

*Darby v. Pilot Corp.*,
    No. 3:16-CV-138, 2017 WL 3221663 (E.D. Tenn. July 28, 2017) ........................8

*Doe v. Chao*,
    540 U.S. 614 (2004) ....................................................................................18

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    362 F. Supp. 3d 1295 (N.D. Ga. 2019) ...........................................................22

*Fero v. Excellus Health Plan*,
    236 F. Supp. 3d 735 (W.D.N.Y. 2017) ................................................. 13, 14, 22

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) ......................................................................................4

*Gardiner v. Walmart, Inc.* ........................................................................22

*Gilot v. Equivity*,
    No. 18-CV-3492, 2018 WL 3653150 (E.D.N.Y. July 31, 2018).............................7

*Graham v. Universal Health Serv., Inc.*,
    No. CV 20-5375, 2021 WL 1962865 (E.D. Pa. May 17, 2021) ...........................13

*Grigsby v. Valve Corp.*,
    No. C12-0553JLR, 2012 WL 5993755 (W.D. Wash. Nov. 14, 2012)....................8

*Hammond v. The Bank of New York Mellon Corp.*,
    No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) .......... 12, 15, 16

*In re Hannaford Bros. Co. Customer. Data Breach Litig.*,
    613 F. Supp. 2d 108 (D. Me. 2009), *aff'd in part, and rev'd in part on other
    grounds*, 659 F.3d 151 (1st Cir. 2011) ...........................................................15

*Hart v. BHH, LLC*,
    No. 15CV4804, 2016 WL 2642228 (S.D.N.Y. May 5, 2016)................................4

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013) ..............................................................................................4

*Jeffers v. Am. Univ. of Antigua*,
   169 A.D.3d 443 (1st Dep't 2019)........................................................................19

*John v. Whole Foods Mkt. Grp.*,
   858 F.3d 732 (2d Cir. 2017) .................................................................................6

*Khan v. Children's Nat'l Health Sys.*,
   188 F. Supp. 3d 524 (D. Md. 2016) ....................................................................10

*Kimbriel v. ABB, Inc.*,
   No. 5:19-CV-215-BO, 2019 WL 4861168 (E.D.N.C. Oct. 1, 2019) ...............7, 11

*Lazebnik v. Apple, Inc.*,
   No. 5:13-cv-4145, 2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) .......................20

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..............................................................................................6

*Madden v. Creative Servs., Inc.*,
   84 N.Y.2d 738 (1995)..........................................................................................19

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012) ....................................................................................4

*Mark G. v. Sabol*,
   93 N.Y.2d 710 (1999)..........................................................................................22

*McMorris v. Carlos Lopez & Assocs., LLC*,
   No. 19-4310, 2021 WL 1603808 (2d Cir. Apr. 26, 2021)...........................7, 8, 16

*Paul v. Providence Health Sys.-Oregon*,
   351 Or. 587, 273 P.3d 106 (2012)........................................................................20

*People v. Brown*,
   54 Cal. 4th 314 (2012)..........................................................................................22

*Price v. L'Oréal USA, Inc.*,
   No. 17 Civ. 0614, 2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017) ...........................20

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
   489 F.3d 1279 (D.C. Cir. 2007) .............................................................................6

*Rahman v. Marriott International, Inc.*,
   20-00654, ECF No. 34 (C.D. Cal. Jan. 12, 2021) .................................................20

*Reilly v. Ceridian Corp.*,
  664 F.3d 38 (3d Cir. 2011) ...................................................................................... 9, 13, 17

*Roe v. City of N.Y.*,
  151 F. Supp. 2d 495 (S.D.N.Y. 2001) ................................................................................6

*Rubio v. Cap. One Bank*,
  613 F.3d 1195 (9th Cir. 2010) ........................................................................................20

*Sackin v. TransPerfect Global, Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2017) ...............................................................................7

*Schwartz v. HSBC Bank USA, N.A.*,
  No. 14 Civ. 9525, 2017 WL 2634180 (S.D.N.Y. June 19, 2017)..........................................5

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
  45 F. Supp. 3d 14 (D.D.C. 2014) ................................................................................. 12, 14

*Shafran v. Harley-Davidson, Inc.*,
  No. 07 Civ. 01365 (GBD), 2008 WL 763177 (S.D.N.Y. Mar. 24, 2008)........................ 16, 19

*Silha v. ACT, Inc.*,
  No. 14 C 0505, 2014 WL 11370441 (N.D. Ill. Dec. 15, 2014) ...........................................11

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
  69 Misc. 3d 597, 131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020)..................................................22

*Smith v. Chase Manhattan Bank, USA, N.A.*,
  293 A.D.2d 598 (2d Dep't 2002) ......................................................................................19

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................................. 6, 9, 10

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ...........................................................................................................4

*In re SuperValu,Inc.*,
  870 F.3d 763 (8th Cir. 2017) ........................................................................................ 9, 16

*Susan B. Anthony List v. Driehaus*,
  134 S. Ct. 2334 (2014) ......................................................................................................6

*Tsao v. Captiva MVP Rest. Partners, LLC*,
  986 F.3d 1332 (11th Cir. 2021)..........................................................................................9

*Wallace v. Health Quest Sys., Inc.*,
  No. 20 CV 545 (VB), 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021)...................................18

*Welborn v. Internal Revenue Service,*
   218 F. Supp. 3d 64 (D.D.C. 2016) .......................................................................10

*Whalen v. Michael Stores, Inc.,*
   153 F. Supp. 3d. 577 (E.D.N.Y. 2015), *aff'd* 689 F. App'x 89 (2d Cir. 2017) .....10

*Whalen v. Michaels Stores, Inc.,*
   689 F. App'x 89 (2d Cir. 2017) ..................................................... 7, 9, 12, 15

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ...............................................................................6, 7

*Willingham v. Glob. Payments, Inc.,*
   No. 1:12-CV-01157-RWS-JFK, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013).........10

*In re Zappos.com, Inc.,*
   108 F. Supp. 3d 949 (D. Nev. 2015) ................................................... 11, 12

**Statutes**

Cal. Bus. & Prof. Code § 17204 ..............................................................20

Cal. Civ. Code § 1798.140(c)(1) ...............................................................23

Cal. Civ. Code § 1798.150 .....................................................................23

GBL § 349 ................................................................................. 18, 19

GBL § 899-a ...........................................................................*passim*

GBL § 899-aa ............................................................................21, 22

**Other Authorities**

Rule 12(b)(1) ..............................................................................4, 17

Rule 12(b)(6) ...........................................................................*passim*

Rules 8(a)...................................................................................2

U.S. Constitution Article III ............................................................*passim*

Defendant AFTRA Retirement Fund ("AFTRA Fund") respectfully submits this memorandum of law in support of its Motion to Dismiss the Consolidated Amended Complaint (ECF No. 25, the "Amended Complaint" or "Compl.") of plaintiffs A.A., Sean Boozer, Paul Bright, Billy Choi, Ron Gilbert, Linnette Harrigan, and Maurice Tyson ("Plaintiffs") pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## I.   PRELIMINARY STATEMENT

AFTRA Fund is a tax-exempt multi-employer employee benefit retirement fund which for over sixty years has provided retirement benefits to performers, including actors, broadcasters, recording artists and voice professionals, and their families.[1] Employers in the entertainment industry, such as movie and television studios, pay into AFTRA Fund pursuant to collective bargaining agreements with the SAG-AFTRA labor union—individual beneficiaries do not contract directly with AFTRA Fund. On or about February 25, 2020, following a lengthy investigation with the assistance of a third-party forensic expert, AFTRA Fund disclosed a cyber-attack. AFTRA Fund subsequently sent notifications in February and December 2020 to certain individuals, including Plaintiffs, noting at that time that, while AFTRA Fund did not have evidence that files containing the individual's information were accessed, such access could not be ruled out. AFTRA Fund provided information regarding how those potentially impacted could protect themselves and offering, among other things, access to 24 months of complimentary identity monitoring services through the security consulting firm Kroll.

On December 22, 2020, about ten months after the initial disclosure, Plaintiffs initiated this putative class action. A consolidated and amended complaint was filed on March 29, 2021.

---

[1] AFTRA Fund is a separate legal entity from the labor union Screen Actors Guild - American Federation of Television and Radio Artists ("SAG-AFTRA"). Compl. ¶ 21.

Despite the significant passage of time, Plaintiffs fail to allege facts demonstrating they have suffered any legally cognizable injury caused by the cyber-attack at issue, pleading instead only a conclusory and speculative list of potential harms. The Supreme Court has made abundantly clear, such "bare-bones" allegations are insufficient to establish Article III standing. As a result the Amended Complaint must be dismissed.

Moreover, even if the Court determines that constitutional standing exists in this matter— which under clear Supreme Court precedent it does not—Plaintiffs' claims must be dismissed because, *inter alia*, Plaintiffs fail to plead sufficient facts supporting each claim, as required by Rules 8(a) and 12(b)(6). Specifically, all of Plaintiffs' common law and New York, California, and Oregon statutory claims require an allegation of actual damages, which is not satisfied by Plaintiffs' conclusory allegations. Further, Plaintiffs' causes of action suffer from additional pleading defects that warrant dismissal. For example, Plaintiffs' unjust enrichment claim warrants dismissal because it is duplicative of the contract and tort claims (and fails to meet the elements of unjust enrichment in any event), the New York General Business Law ("GBL") § 899-a claim fails as it is well established that § 899-a does not provide a private cause of action, and Plaintiff's California Consumer Privacy Act claim fails as that statute, which was made effective in January 2020, cannot be applied retroactively, nor does it apply to non-profits such as the AFTRA Fund.

## II.   STATEMENT OF FACTS[2]

This action arises out of a cyber-attack, disclosed on or about February 25, 2020, by AFTRA Fund, potentially involving personal identifying information ("PII") of certain current and former Fund participants. Compl. ¶ 4. AFTRA Fund announced the issue by a press release,

---

[2] The allegations of the Amended Complaint are taken as true solely for the purposes of this motion.

and by letters to individuals whose information was potentially subject to unauthorized access. *Id.* ¶¶ 4, 29. While AFTRA Fund did not have evidence that personal information had been accessed, it acknowledged that such access could not be ruled out. *Id.* AFTRA Fund also provided information on how potentially impacted individuals could protect themselves, including by obtaining a free credit report or contacting a call center it set up to answer questions. *Id.* AFTRA Fund also offered 24 months of complimentary identify monitoring services through Kroll Cyber Security to potentially impacted individuals. *See* Compl. ¶¶ 67, 77, 87, 97, 107, 121.

Plaintiffs are residents of California (A.A., Boozer, Choi, and Gilbert), Oregon (Bright), and New York (Harrigan and Tyson), who participated in the AFTRA Fund's benefit plan(s) and allege that they received letters from AFTRA Fund regarding the cyber-attack. *Id.* ¶¶ 14-20. Plaintiffs do not specifically allege that any of their personal information has been misused as a result of AFTRA Fund's data security issue. *See id.* ¶¶ 65-139. In fact, five out of the seven named Plaintiffs do not allege any specific or tangible harm and instead assert claims based only on speculative potential future risk or alleged time spent monitoring credit.[3] Further, no Plaintiff specifically alleges that he or she has incurred any actual financial expenses as a result of the cyber-attack. *Id.* This fact pattern illustrates the fact that a cyber-attack, on its own, does not cause a cognizable "injury."

---

[3] While Plaintiffs Gilbert and Tyson allege general instances of suspicious activity, they do not allege any causal link between the activity (which includes unauthorized debit card charges and notifications that unspecified information is available on the dark web) and the cyber-attack. *See* Compl. ¶¶ 108-109, 131.

### III.   PLEADING STANDARDS

#### A.   Rule 12(b)(1)

Article III of the U.S. Constitution limits the jurisdiction of federal courts to the resolution of "cases" and "controversies." U.S. Const. Art. III, § 2. "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Thus, a federal court lacks jurisdiction to entertain a dispute unless the plaintiff possesses standing to recover on each of his or her claims. *See Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013) (in order for an Article III court to consider the merits of a case, the "party invoking the power of the court" must "have 'standing'"); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) ("It is well established that 'a plaintiff must demonstrate standing for each claim [he/she] seeks to press.'") (citation omitted); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling") (quotation omitted).

"An objection to standing is properly made on a Rule 12(b)(1) motion." *Caruso v. Zugibe*, No. 14 CV 9185 VB, 2015 WL 5459862, at *4 (S.D.N.Y. June 22, 2015), *aff'd*, 646 F. App'x 101 (2d Cir. 2016) (citation omitted); *see also All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 (2d Cir. 2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1) . . . the proper procedural route is a motion under Rule 12(b)(1)."). Indeed, a federal court has an "independent obligation" to consider standing even if the parties fail to raise the issue. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990). "[O]n a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the party invoking the Court's jurisdiction bears the burden of demonstrating that subject matter jurisdiction exists . . ." *Hart v. BHH, LLC*, No. 15CV4804,

2016 WL 2642228, *6, n.32 (S.D.N.Y. May 5, 2016). "To survive a motion to dismiss for lack of standing, the plaintiff must allege facts that, when accepted as true, 'affirmatively and plausibly suggest that it has standing to sue.'" *Bank v. CreditGuard of Am.*, No. 18-CV-1311, 2019 WL 1316966, at *3 (E.D.N.Y. Mar. 22, 2019) (citation omitted). "[A] plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman*, 352 F.3d 625, 636-37 (2d Cir. 2003); *see also Schwartz v. HSBC Bank USA, N.A.*, No. 14 Civ. 9525, 2017 WL 2634180, at *3 (S.D.N.Y. June 19, 2017) ("[T]he Second Circuit has made clear that factual allegations going to the Court's subject matter jurisdiction should be not merely threadbare and conclusory, but rather should be 'affirmatively and plausibly' pled.") (quoting *Amidax Trading Grp v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (*per curiam*)).

### B.      Rule 12(b)(6)

On a motion to dismiss a complaint under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Indeed, a claim is only facially plausible when its actual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *See id.* "Factual allegations must be enough to raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555-56. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.    ARGUMENT

### A.    Plaintiffs Have Not Alleged Injury-in-Fact Necessary to Satisfy the Standing Requirements of Article III

As a threshold matter, Plaintiffs lack Article III standing to assert their claims because they do not adequately allege that they have suffered any concrete and cognizable injury as a result of AFTRA Fund's alleged conduct. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "irreducible constitutional minimum" of standing in federal court includes the following three requirements: (1) the plaintiff must have suffered an "injury in fact"; (2) the injury in fact must be "fairly traceable" to the challenged conduct of the defendant; and (3) the injury must be "likely to be redressed" by a favorable judicial decision. *Id.* at 1547 (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs bear the burden of alleging facts satisfying each of these elements. *Id*. They have failed to do so here.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest" that is "concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S., at 560); *see also John v. Whole Foods Mkt. Grp.*, 858 F.3d 732, 736 (2d Cir. 2017) (same). The requirement that an injury be "actual or imminent"—the component of the injury-in-fact element that is at issue in this case—is understood in "temporal terms." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1298 (D.C. Cir. 2007) (*citing Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)); *Roe v. City of N.Y.*, 151 F. Supp. 2d 495, 504 (S.D.N.Y. 2001) (same). Unlike an "actual" injury, an "imminent" injury is one that has not yet happened, but is "certainly impending." *Clapper*, 568 U.S. at 409; *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur") (citation omitted). The

Supreme Court has "repeatedly reiterated that . . . allegations of possible future injury are not sufficient." *ACLU v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (internal quotation, alteration, and citations omitted).

Indeed, the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly* impending to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore*, 495 U.S. at 158) (emphasis added by *Clapper* Court). The Second Circuit recently applied this holding in the cybersecurity context. *See McMorris v. Carlos Lopez & Assocs., LLC*, No. 19-4310, 2021 WL 1603808, at *3 (2d Cir. Apr. 26, 2021) (quoting *Clapper*, 568 U.S. at 398). Indeed, under Second Circuit law, the pleading of cognizable injury requires that a plaintiff do more than merely list categories of potentially recoverable harms. Supporting facts must be pled which render the bare assertion of such injuries plausible. *See Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 90-91 (2d Cir. 2017);[4] *Baur*, 352 F.3d at 636-37 ("a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing"). Numerous decisions from other circuits are in accord. *See, e.g.*, *Kimbriel v. ABB, Inc.*, No. 5:19-CV-215-BO, 2019 WL 4861168, at *2, *3 (E.D.N.C. Oct. 1, 2019) (plaintiffs lacked standing "[d]espite their list" of various alleged injuries—including diminished value of PII, compromise/publication of PII, out-of-pocket mitigation costs, lost opportunity costs, and more—where plaintiffs did not "allege[] that they suffered a concrete injury, at least not one that

---

[4] *Whalen* is a summary order. Although summary orders do not have precedential effect, they offer valuable guidance about particular issues. As such, District Courts in this circuit have relied on *Whalen* for the proposition that no Article III injury exists where a plaintiff does not allege out-of-pocket expenses from alleged identity theft or a plausible risk of future harm. *See, e.g., Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 746 (S.D.N.Y. 2017); *Gilot v. Equivity*, No. 18-CV-3492, 2018 WL 3653150, at *2 (E.D.N.Y. July 31, 2018).

was not a self-imposed harm in response to the speculative threat"); *Grigsby v. Valve Corp.*, No. C12-0553JLR, 2012 WL 5993755, at *4 (W.D. Wash. Nov. 14, 2012) (conclusory statements of monetary loss, without any supporting factual allegations deemed insufficient under *Twombly* and *Iqbal* to state cognizable claim of damages in data breach case); *Darby v. Pilot Corp.*, No. 3:16-CV-138, 2017 WL 3221663, at *4 (E.D. Tenn. July 28, 2017) (no standing based on lost "spending power" or "opportunity cost[s]" where plaintiffs alleged no specific purchases/opportunities lost, but rather a generalized "inability to make hypothetical purchases").

In *McMorris*, the Second Circuit set forth three non-exclusive factors to consider when determining standing in a potential data-breach action: "(1) whether the plaintiffs' data has been exposed as the result of a targeted attempt to obtain that data; (2) whether any portion of the dataset has already been misused, even if the plaintiffs themselves have not yet experienced identity theft or fraud; and (3) whether the type of data that has been exposed is sensitive such that there is a high risk of identity theft or fraud." 2021 WL 1603808, at *5.

Here, Supreme Court precedent and the *McMorris* factors warrant dismissal.[5] Plaintiffs do not, and cannot allege that any of their PII was actually compromised or accessed during the cyber-attack or that their PII "has already been misused." *Id.* Instead, they allege only that AFTRA Fund, following an investigation, could not "rule out" such exposure. Compl. ¶ 28. Indeed, as discussed *infra*, despite the passage of time, five of the seven Plaintiffs have not

---

[5] While Plaintiffs allege the potential exposure of a type of data that is sensitive, the *McMorris* Court made clear that this factor alone is not dispositive. *See McMorris*, 2021 WL 1603808 at *6 ("[w]hile the information that was inadvertently disclosed by CLA included the sort of PII that might put plaintiffs at a substantial risk of identity theft or fraud, in the absence of any other facts suggesting that the PII was intentionally taken by an unauthorized third party or otherwise misused, this factor alone does not establish an injury in fact. To hold otherwise would allow plaintiffs to string together a lengthy 'chain of possibilities' resulting in injury.") (*quoting Clapper*, 568 U.S. at 410).

alleged any suspicious activity whatsoever. Moreover, as discussed further below, the two Plaintiffs that purport to have experienced suspicious activity, allege general activity that cannot be linked to the cyber-attack at issue. Thus, the entire premise of Plaintiffs' claimed injury is speculative.

Moreover, Plaintiffs' alleged injuries themselves are purely conjectural and speculative, and are thus insufficiently actual or imminent to support standing. Instead of particular injury, Plaintiffs allege, in conclusory fashion the following categories of losses: (1) the mere potential exposure of Plaintiffs' personal data, (2) losses from the possible "diminution in value" of Plaintiffs' PII; (3) time spent preventing or mitigating possible future losses resulting from the cyber-attack ; and (4) a possible increased risk of future losses. These allegations do not constitute cognizable injury required to establish Article III standing.

<blockquote>1.   <u>Plaintiffs' Alleged "Injuries" are Insufficiently Actual or Imminent to Support Standing</u></blockquote>

<blockquote>a.   *The Mere Exposure of Personal Data is Insufficient to Support Standing*</blockquote>

It is well established that the allegation of the mere potential exposure of personal information is not a particularized injury sufficient to show standing. *See Spokeo*, 136 S. Ct. at 1550; *Whalen*, 689 F. App'x at 90-91; *accord In re SuperValu,Inc.*, 870 F.3d 763, 770 (8th Cir. 2017) (bare "allegations that, on information and belief, illicit websites [were] selling [plaintiffs'] Card Information to counterfeiters and fraudsters" were "speculative" and "fail[ed] to allege any injury 'to the plaintiff[s].'") (citation omitted); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (bare and speculative allegations that hacker "read, copied, and understood" plaintiffs' personal information and "intend[ed] to commit future criminal acts by misusing the information" were insufficient to establish standing, as "there has been no misuse of the information, and thus, no harm"); *Tsao v. Captiva MVP Rest. Partners, LLC,* 986 F.3d

9

1332, 1344 (11th Cir. 2021) (plaintiff "has not alleged either that the [] data breach placed him at a 'substantial risk' of future identity theft or that identity theft was 'certainly impending.' . . .*Evidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing.*") (emphasis added) (quoting *Clapper*, 568 U.S. at 409, 414 n.5).

> b.    *Plaintiffs' Allegation That Exposure Of Their Information Creates A "Diminution Of Value" Of That Information Does Not Plead A Cognizable Injury*

Plaintiffs' summary claim of "diminution of value" of their PII, which does not have an independent value that can be "diminished," is also insufficient to support Article III standing under clear Supreme Court precedent requiring an injury-in-fact to be sufficiently concrete. *See Spokeo*, 136 S. Ct. at 1548 ("A 'concrete' injury must be 'de facto'; that is, it must actually exist . . .When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'"). Courts both in this circuit and across the country have held that substantially similar allegations are insufficient to establish standing where, as here, plaintiffs fail to plead that they could have profited from the sale of the information, or that the defendant/third party's sale of the information actually diminished its market value. *See, e.g., Whalen v. Michael Stores, Inc.*, 153 F. Supp. 3d 577, 582 (E.D.N.Y. 2015) ("[W]ithout allegations about how her cancelled card information lost value, [plaintiff] does not have standing on this ground."), *aff'd* 689 F. App'x 89 (2d Cir. 2017); *Welborn v. Internal Revenue Service*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) ("Courts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value."); *Willingham v. Glob. Payments, Inc.*, No. 1:12-CV-01157-RWS-JFK, 2013 WL 440702, at *7 (N.D. Ga. Feb. 5, 2013) ("Plaintiffs' PII does not have an inherent monetary value."); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (rejecting claim based on

the diminution in value of PII because plaintiff could not "explain how the hackers' possession of that information has diminished its value"); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 954 (D. Nev. 2015) ("Plaintiffs do not allege any facts explaining how their personal information became less valuable as a result of the breach or that they attempted to sell their information and were rebuffed because of a lower price-point attributable to the security breach."); *Silha v. ACT, Inc.*, No. 14 C 0505, 2014 WL 11370441, at *3 (N.D. Ill. Dec. 15, 2014) (plaintiffs' allegations that they could sell their own PII were "not plausible" and "merely speculative" where "[p]laintiffs do not allege that they have actually attempted to sell their PII—whether in the 'market' that Defendants developed or otherwise—or that they were actually deprived of the value of their PII"); *see also Kimbriel*, 2019 WL 4861168, at *3 ("All victims of security breaches suffer loss of control of their PII, a diminution of its value if and when the PII is sold on the black market, and a compromise of their PII. **Were it the case that these harms constituted injury-in-fact, all victims of data breaches would satisfy the injury requirement.**").(emphasis added).

    The allegations of diminution of value of PII are equally unavailing here. As a preliminary matter, the allegation of diminution is entirely speculative as there is no allegation that Plaintiffs' PII was accessed or is at risk. Moreover, the Amended Complaint is devoid of any suggestion that Plaintiffs sought, or plan to seek, to monetize their PII and suggests the contrary. *See, e.g.*, Compl. ¶¶ 68, 78, 88, 98, 111, 122, 133 (alleging each Plaintiff "is very careful" about sharing personal information). For these reasons, Plaintiffs' allegations regarding diminution in the value of their information are insufficient to establish Article III standing.

> c.   *Plaintiffs' Conclusory Allegations Of Potential*
> *Future Harm Fail To Establish Article III Standing*

Plaintiffs' attempt to allege injury based on the conclusory and speculative claim of

*potential* future harm resulting from the *possible* exposure of their PII is also unavailing. Compl.

¶¶ 73, 83, 93, 104, 116, 127, 138, 305. The Supreme Court has made clear that this type of

speculative allegation of *possible* future injury does not satisfy Article III's injury in fact

requirement. *See Clapper*, 568 U.S. at 409 ("threatened injury must be certainly impending to

constitute injury in fact and … allegations of possible future injury are not sufficient")

(quotations omitted). Under that standard, Plaintiffs' conclusory and speculative allegations

regarding the possibility of future harm arising from the potential exposure of their personal

information are insufficient to establish Article III standing. *See Whalen*, 689 F. App'x at 90-91;

*Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017) (mere increased risk of identity theft is

insufficient to satisfy Article III standing requirements under *Clapper*); *Hammond v. The Bank of*

*New York Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *5-9 (S.D.N.Y.

June 25, 2010) (same); *Zappos.com*, 108 F. Supp. 3d at 955 (collecting authorities and

concluding that "[t]he majority of courts dealing with data-breach cases post-*Clapper* have held

that absent allegations of actual identity theft or other fraud, the increased risk of such harm

alone is insufficient to satisfy Article III standing."); *In re Sci. Applications Int'l Corp. (SAIC)*

*Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 27-28 (D.D.C. 2014) (noting that "[m]ost

cases that found standing [based on an increased risk of identity theft] … were decided pre-

*Clapper* or rely on pre-*Clapper* precedent and are, at best, thinly reasoned," and "since *Clapper*

was handed down last year, courts have been even more emphatic in rejecting 'increased risk' as

a theory of standing in data-breach cases).

The Western District of New York's decision in *Fero v. Excellus Health Plan* is instructive. In *Fero*, several plaintiffs "alleged increased risk of harm, unaccompanied by any concrete misuse of their stolen personal information." 236 F. Supp. 3d 735, 753 (W.D.N.Y. 2017). As here, the "non-misuse" plaintiffs in *Fero* did not allege "any facts indicating that the hackers ha[d] misused their personal information since the data breach occurred, or that any other suspicious activity ha[d] occurred." *Id.* As a result, the court in *Fero* concluded that the injury alleged by these plaintiffs relied "on a chain of possibilities about the actions of independent actors" and was insufficient to establish Article III standing for the non-misuse plaintiffs. *Id.* (citing *Clapper*, 568 U.S. at 410); *see also Graham v. Universal Health Serv., Inc.*, No. CV 20-5375, 2021 WL 1962865, at *4 (E.D. Pa. May 17, 2021) (rejecting standing following cyber-attack where alleged risk "is dependent on entirely speculative, future actions of an unknown third-party.") (quoting *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011)).

Here, like in *Fero,* the Amended Complaint does not allege that any of the named Plaintiffs' PII was accessed during the cyber-attack, much less facts suggesting that there is any concrete basis to believe that their data is at real risk. In fact, despite the almost two years that have elapsed since the cyber-attack, Plaintiffs do not allege any suspicious activity "fairly traceable" to Defendant's alleged actions. Plaintiffs A.A., Altes, Boozer, Bright, Choi, and Harrington fail to allege that they have experienced *any* potential fraudulent activity, much less fraudulent activity that could be linked to the cyber-attack. *See Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 14-15 (D.D.C. 2019) (noting that the vast majority of courts addressing alleged mitigation injuries in the data breach context "have distinguished between plaintiffs whose information has been exposed *and* misused and those whose information has been exposed but not misused.") (emphasis in original). Thus, the purported risk of potential future harm from the

possible exposure of these Plaintiffs' PII is undoubtedly remote and insufficient as a matter of law to establish standing.

Furthermore, even the two Plaintiffs (Gilbert and Tyson) who allege that they have experienced some fraudulent or suspicious activity fail to allege an injury-in-fact traceable to the cyber-attack. Plaintiffs Gilbert and Tyson allege that at some unspecified time subsequent to the cyber-attack they experienced some suspicious activity, namely, Plaintiff Gilbert alleges false credit expenses and that he received notice that his personal information is on the dark web,[6] Compl. ¶¶ 108-109, while Plaintiff Tyson alleges instances of an unauthorized third party using or attempting to use his debit card, *id.* ¶ 131. However, Plaintiffs Gilbert and Tyson fail to allege any connection between the fraudulent credit or debit card transactions and the cyber-attack at issue, which does not involve any allegation of potential exposure of financial information.[7] In fact, the Amended Complaint identifies the information provided to Defendant by Plaintiffs Gilbert and Tyson. Compl. ¶¶ 106, 129. This information includes "name, address, date of birth and Social Security." *Id.* Notably, Plaintiffs Gilbert and Tyson do not allege that they provided Defendant with the information allegedly compromised (i.e., debit card or bank account information *Id.* ¶¶ 108, 131) nor is there any allegation that such information was kept by Defendant. As a result, these Plaintiffs' tenuous claims of injury cannot be connected to the alleged actions of Defendants and fail to establish standing here.[8] *See In re Sci. Applications Int'l*

---

[6] Plaintiff Gilbert's allegation of an increase in phishing spam, junk mail, and solicitations and a notification that unspecified information is on the dark web (Compl. ¶ 109) is entirely general and unconnected to the type of information allegedly provided by Plaintiff Gilbert to Defendant. Notably, the Amended Complaint does not allege that Plaintiff Gilbert's email address was provided to Defendant or potentially accessed during the cyber-attack.

[7] These Plaintiffs are thus distinguishable from the "misuse" plaintiffs found to have standing in *Fero*, where the alleged breach involved "financial payment information (including credit card numbers)." *Fero*, 236 F. Supp. 3d at 744.

[8] For the same reasons, Plaintiffs Gilbert and Tyson would be inappropriate class representatives.

*Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 31 (D.D.C. 2014) (plaintiffs alleging unauthorized charges to credit or debit cards had no standing where they "proffer no plausible explanation for how the thief would have acquired their banking information" following breach of social security numbers and other non-banking data).

Moreover, even if Plaintiffs Gilbert and Tyson did allege suspicious activity traceable to the cyber-attack -- which they decidedly do not and cannot because the suspicious activity alleged relates to financial information never provided to Defendant -- these claims fail to establish cognizable injury as they do not allege any non-reimbursed out of pocket losses.[9] Fraudulent charges that have been reimbursed, reversed or do not result in "actual monetary loss" do not result in cognizable injury sufficient for Article III standing. *See Hammond*, 2010 WL 2643307 at *8 (no standing where four of seven named plaintiffs acknowledged they suffered no losses, a fifth suffered losses unrelated to data breach, and "the remaining two . . . claim that their personal information was improperly used but acknowledge they were reimbursed for the unauthorized charges"); *Whalen,* 689 F. App'x at 90-91 (rejecting plaintiff's attempt to establish standing based on a series of attempted fraudulent charges on her credit card, which had not resulted in any actual monetary loss to her, and the possible threat of future harm, as "she never was either asked to pay, nor did pay, any fraudulent charge."); *In re Hannaford Bros. Co. Customer. Data Breach Litig.*, 613 F. Supp. 2d 108, 133-134 (D. Me. 2009) (allegations of unauthorized charges that were later reversed by issuing banks insufficient to survive motion to dismiss), *aff'd in part, and rev'd in part on other grounds*, 659 F.3d 151 (1st Cir. 2011).

---

[9] In fact, Plaintiff Gilbert concedes that he sought reimbursement from his bank for the unauthorized charges. Compl. ¶ 108.

d.      *Plaintiffs' Conclusory Allegations Of The Time And Expenses Spent To Prevent Or Mitigate The Consequences Of Any Future Disclosure Of Their Personal Information Also Fail To Establish Article III Standing*

Plaintiffs also claim injury in the form of lost time spent monitoring their personal data and otherwise mitigating the potential risks of possible future disclosure of their personal information. *See* Compl. ¶¶ 67, 77, 87, 97, 107, 121, 132. Plaintiffs do not explain why the alleged mitigation costs were reasonable and necessary, given AFTRA Fund's offer of free identity monitoring services. In any event, as the Supreme Court has explained, "respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending . . . If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Clapper*, 568 U.S. at 416.

Furthermore, as the Second Circuit, relying on *Clapper*, has made clear, time and money spent to mitigate or protect against a mere risk of future identify theft are not legally cognizable injuries, particularly where, as here, no actual misuse or identity theft has been alleged. *See McMorris*, 2021 WL 1603808 at *5 ("where plaintiffs 'have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury.' . . .This notion stems from the Supreme Court's guidance in *Clapper* . . . ") (quoting *In re SuperValu*, 870 F.3d at 771); *see also Hammond*, 2010 U.S. WL 2643307 at *13 (granting summary judgment for lack of injury despite plaintiff's allegation that she purchased credit monitoring following unauthorized charges on her account); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 284 (S.D.N.Y. 2008); *Shafran v. Harley-Davidson, Inc.*, No. 07 Civ. 01365 (GBD), 2008 WL 763177, at *3 (S.D.N.Y. Mar. 24, 2008) (collecting additional authorities and holding that "time and expense of credit monitoring … is

not, in itself, an injury that the law is prepared to remedy."); *Reilly*, 664 F.3d at 46 ("[A]lleged

time and money expenditures to monitor [plaintiffs'] financial information do not establish

standing, because costs incurred to watch for a speculative chain of future events based on

hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of

injury' which forms the basis for [plaintiffs'] claims."); *Attias*, 365 F. Supp. 3d at 14-15 (D.D.C.

2019) (noting that the vast majority of courts addressing alleged mitigation injuries in the data

breach context "have distinguished between plaintiffs whose information has been exposed *and*

misused and those whose information has been exposed but not misused. These courts draw the

line at responsive versus preventative expenditures.") (emphasis in original).

In sum, Plaintiffs have entirely failed to allege standing, and the Amended Complaint

should be dismissed in its entirety.

### B.     Plaintiffs' Common Law And State Statutory Claims Fail To State Viable Claims For Relief.

For the reasons discussed above, the Court need not address the elements of Plaintiffs'

various causes of actions because the Amended Complaint fails to meet the threshold

requirement of standing and should be dismissed under Rule 12(b)(1). However, even if

Plaintiffs could establish standing, which they cannot, their conclusory allegations do not contain

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Indeed, as detailed more fully below, each of Plaintiffs' common law and statutory claims fails

to plead essential elements, requiring dismissal of the Amended Complaint pursuant to Fed. R.

Civ. P. 12(b)(6). As a preliminary matter, Plaintiffs' claims fail under 12(b)(6) for the same

reason they fail under 12(b)(1), the Amended Complaint fails to plead actual injury or damages,

a higher pleading threshold than harm required for purposes of Article III standing. Plaintiffs'

claim for unjust enrichment independently fails as duplicative of the tort and contract claims (and

fails to state a claim in any event); the claim for failure of timely notice under New York General

Business Law ("GBL") § 899-a fails as that statute does not provide for a private cause of action;

and Plaintiffs' California Consumer Privacy Act ("CCPA") claim fails as the alleged breach pre-

dates the effective date of the statute, which does not apply retroactively, and, separately,

because the CCPA does not apply to non-profit entities.

        1.    <u>Plaintiffs' Failure To Adequately Allege "Injury" Is Fatal<br>to All of Their Alleged Causes of Action</u>

      Plaintiffs do not—and cannot—assert non-conclusory allegations of actual injury here

because there is no allegation that Plaintiffs' PII was, in fact, compromised or that there is certain

and impending risk of harm traceable to Defendant's alleged actions. Notably, even if the Court

were to find that the Amended Complaint pleads harm sufficient to meet requirements of Article

III standing—which it does not—the speculative and conclusory claims of injury fail to meet the

higher pleading threshold for injury sufficient to survive a 12(b)(6) motion. *See Doe v. Chao*,

540 U.S. 614, 624–25 (2004) ("an individual subjected to an adverse effect has injury enough to

open the courthouse door, but without more has no cause of action for damages . . ."); *see also*

*Wallace v. Health Quest Sys., Inc.*, No. 20 CV 545 (VB), 2021 WL 1109727, at *5 (S.D.N.Y.

Mar. 23, 2021) (in connection with alleged data breach, "Pleading damages to support a cause of

action is distinct from pleading injury-in-fact to support standing. [] Thus, although plaintiffs'

allegations are sufficient to support standing, plaintiffs must also plead cognizable damages to

survive defendant's motion to dismiss under Rule 12(b)(6)."). As a result, the Amended

Complaint should be dismissed in its entirety.

      Plaintiffs' New York common law and statutory claims, for negligence (Count I), breach

of implied contract (Count II), breach of confidence (Count IV), and New York General

Business Law ("GBL") § 349 (Count V)[10] all fail for lack of injury or damages. *See Shafran*, 2008 WL 763177, at *2 n.2 (dismissing claims after cyber-attack and identifying numerous decisions from New York courts holding that actual injury is an essential element of various causes of action, including negligence, breach of contract, and violation of GBL § 349); *Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598, 599 (2d Dep't 2002) (allegation that defendant sold "confidential customer information" did not establish any actual injury under GBL 349); *see also Cornfield v. Cornfield*, 156 F. App'x 343, 344 (2d Cir. 2005) (damages are an element of negligence claim); *Jeffers v. Am. Univ. of Antigua*, 169 A.D.3d 443, 444 (1st Dep't 2019) (same as to implied contract); *Madden v. Creative Servs., Inc.*, 84 N.Y.2d 738, 744 (1995) (same as to breach of confidence).

The New York Court of Appeals has explained, "[a] threat of future harm is insufficient to impose liability against a defendant in a tort context." *Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439, 446 (2013) (declining to recognize cause of action, brought by long-time smokers who had *not* been diagnosed with smoking-related disease, for "medical monitoring" for such a disease). As the Court in *Caronia* reasoned, New York's injury requirement "serves a number of important purposes: it defines the class of persons who actually possess a cause of action, provides a basis for the factfinder to determine whether a litigant actually possesses a claim, and protects court dockets from being clogged with frivolous and unfounded claims." *Id.*

Similarly, injury is also a required element to state a claim under Plaintiffs' California and Oregon state statutory causes of action, including under California's Consumer Legal

---

[10] The Court need not reach whether injury is required under unjust enrichment (Count III) as this cause of action does not lie where it simply duplicates or replaces a conventional contract or tort claim (*see infra*) or GBL § 899-a (Count V) as there is no private cause of action under this provision (*see infra*).

Remedies Act ("CLRA") (Count VII), Unfair Competition Law ("UCL") (Count VIII and IX), Customer Records Act (Count X), and Consumer Privacy Act (Count XI), and Oregon's Unlawful Trade Practices Act ("UTPA") (Count XII).[11] *See, e.g.*, *Lazebnik*, 2014 WL 4275008 at *2 ("In addition to Article III standing, a plaintiff must establish statutory standing to bring claims under the UCL [Count VIII and IX] or CLRA [Count VII]"); *Paul v. Providence Health Sys.-Oregon*, 351 Or. 587, 603, 273 P.3d 106, 115 (2012) (Oregon's UTPA [Count XII] requires "ascertainable loss of money or property . . ."); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1218 (N.D. Cal. 2013) ("cognizable injury" required to bring claim under California Consumer Records Act (Count X)); *Rahman v. Marriott International, Inc.*, 20-00654, ECF No. 34 (C.D. Cal. Jan. 12, 2021) (dismissing CCPA claim (Count XI) for lack of alleged injury-in-fact under 12(b)(1) and thus declining to rule on 12(b)(6) grounds as moot).

2. Plaintiffs' Unjust Enrichment Cause of Action Fails as
Duplicative and Does Not State a Claim

Plaintiffs' claim for unjust enrichment (Count III) also fails as a matter of law. As a threshold matter, this claim fails as duplicative of their contract and negligence claims. *See Price v. L'Oréal USA, Inc.*, No. 17 Civ. 0614, 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) ("[A]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim" (quoting *Corsello v. Verizon* N.Y. Inc., 967 N.E.2d 1177, 1185 (2012)).

---

[11] Indeed, the CLRA and UCL and Oregon's UTPA all require that Plaintiff show an **economic** injury, which Plaintiffs do not allege in this case. As discussed *supra*, no Plaintiff alleges *any* out-of-pocket economic damages. *See Lazebnik v. Apple, Inc.*, No. 5:13-cv-4145, 2014 WL 4275008 at *2 (N.D. Cal. Aug. 29, 2014) (UCL and CLRA "require the plaintiff to show that he or she has suffered an economic injury. The economic injury requirement is substantially narrower than federal standing . . .") (internal citations and quotations omitted); *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) ("To assert a UCL claim, a private plaintiff needs to have 'suffered injury in fact and . . . lost money or property as a result of the unfair competition.'") (quoting Cal. Bus. & Prof. Code § 17204); *Paul*, 351 Or. at 603 ("There is no indication that the UTPA was intended to protect against such speculative losses as the *risk* of identity theft") (emphasis in original).

Furthermore, Plaintiffs fail to allege the elements of unjust enrichment, i.e. that "the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff." *Corsello*, 967 N.E.2d at 1185. As the Court of Appeals explained, such a claim lies where "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Id.* Here, Plaintiffs do not allege any such benefit that inured to AFTRA Fund, instead Plaintiffs misleadingly allege that they "purchased services from Defendant." Compl. ¶ 208. This allegation fundamentally misstates Plaintiffs' relationship to the Defendant, because Plaintiffs have no contractual or customer/purchaser relationship to the AFTRA Fund whatsoever. The contract that provided for an employer to make contributions to the AFTRA Fund as a result of work performed by Plaintiffs (at some point in their lives) was between an employer or association of employers and the AFTRA Union or SAG-AFTRA Union.[12]

3.     Plaintiffs Have No Private Cause of Action Under GBL § 899-a

Plaintiffs' attempt to bring a cause of action for failure to timely notify Plaintiffs of the cyber-attack in violation of GBL § 899-aa (Count V) fails—even if Defendant's notification is deemed untimely, which it is not—as this statute provides no private cause of action. Rather, the plain language of § 899-aa provides only for the attorney general to bring an action "in the name and on behalf of the people of the state of New York." GBL § 899-aa(6). Under Court of Appeals precedent, no private right of action exists "in instances where '[t]he Legislature specifically considered and expressly provided for enforcement mechanisms' in the statute itself." *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 49 Misc. 3d 1027, 1037, 19

---

[12] As noted above, AFTRA Fund is a multiemployer retirement fund and, as such, receives payments from employers made pursuant to collective bargaining agreements for the purpose of funding pensions. Plaintiffs are not "purchasers" of "services" from AFTRA Fund, nor – as a multiemployer fund – does Defendant receive payments or money of any kind other than employer contributions pursuant to a collective bargaining agreement.

N.Y.S.3d 850, 858 (N.Y. Sup. Ct. 2015) (quoting *Mark G. v. Sabol*, 93 N.Y.2d 710, 720 (1999). Thus, "permitting a private right of action for a violation of [GBL] § 899–aa would not be consistent with Legislature scheme. The enforcement of the statutory provisions has been expressly entrusted to the attorney general." *Id.; accord Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 69 Misc. 3d 597, 608, 131 N.Y.S.3d 817, 827 (N.Y. Sup. Ct. 2020) (dismissing § 899-aa claim as the statute does not provide a private right of action); *Fero*, 236 F. Supp. 3d at 777 ("§ 899–a provides no private right of action"); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1340 (N.D. Ga. 2019) ("since no private right of action exists under New York's data-breach statute, the Plaintiffs' claims under section 899-aa should be dismissed").

### 4. Plaintiffs' CCPA Claim Fails as The Statute is Not Retroactive and Does Not Apply to Non-Profit Organizations

Finally, Plaintiffs' claim under the CCPA (Count XI) must be dismissed for the independent reason that the alleged cybersecurity attack occurred in October 2019 and the act does not apply retroactively. Compl. ¶ 2. As the Northern District of California recently explained in *Gardiner v. Walmart, Inc.*, "The CCPA went into effect on January 1, 2020, and it does not contain an express retroactivity provision . . . it is well-settled under California law that 'in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature must have intended a retroactive application.'" No. 20-cv-04618-JSW, ECF No. 43 at 3 (N.D. Cal., March 5, 2021) (quoting *People v. Brown*, 54 Cal. 4th 314, 319-20 (2012)). Therefore, an alleged cybersecurity attack "is only actionable under the CCPA if it occurred after January 1, 2020." *Id.* at 4.

Plaintiffs' CCPA claim also independently fails because the statute, on its face, is inapplicable to non-profit organizations. Rather, with the exception of certain provisions relating

to HIPAA violations inapplicable here, the CCPA applies only to "businesses." CCPA, Cal. Civ. Code § 1798.150. A "business," in turn, is defined by the statute as any legal entity that is "organized or operated for the profit or financial benefit of its shareholders or other owners." CCPA, Cal. Civ. Code § 1798.140(c)(1). As a tax-exempt, not for profit benefit plan, the AFTRA Fund is not a "business" as defined by the CCPA, and therefore the CCPA is inapplicable and Plaintiffs' claim must be dismissed. *See Bahari v. State Bar of California*, No. 19CV360452, 2020 WL 5493870, at *3 (Cal. Super. Aug. 06, 2020) ("the State Bar is not subject to the CCPA, which applies, by its terms, to a 'business.'").

## CONCLUSION

For the reasons set forth above, Plaintiffs' Amended Complaint should be dismissed.


Dated:  New York, New York
        June 7, 2021

                                        Respectfully submitted,

                                        **SEYFARTH SHAW LLP**

                                        By:/s/ Paul A. Ferrillo

                                        Paul A. Ferrillo
                                        Daphne Morduchowitz
                                        620 Eighth Avenue
                                        New York, New York 10018-1405
                                        (212) 218-5500
                                        pferrillo@seyfarth.com
                                        dmorduchowitz@seyfarth.com

                                        *Attorneys for Defendant AFTRA Retirement Fund*

23